# MULTNOMAH COUNTY,
*Respondent,*

*v.*

# $5,650 IN U.S. CURRENCY,
one 1984 BMW 2-D sedan, VIN WBAAK7408E8705670, and one 1979 Honda 2-D, OR LIC. BTL 787,
*Defendants,*

# WELLS,
*Appellant,*

*and*

# STEWART,
*Respondent.*

(A8512-07963; A48456)

# MULTNOMAH COUNTY,
*Respondent,*

*v.*

# PROCEEDS OF FIRST INTERSTATE BANK OF OREGON ACCOUNT #1040029661,
in the name of Roosevelt Dossie;
proceeds of First Interstate
Bank of Oregon account #1040000535,
in the name of Roosevelt Dossie; and the
proceeds of First Interstate Bank of Oregon
cashier's check no. 00925
in the amount of $84,770.60 and
proceeds of First Interstate Bank of Oregon
cashier's check no. 00923 in the amount of $4,974.18,
*Defendants,*

# DOSSIE,
*Appellant,*

# DOSSIE et al,
*Intervenors.*

(A8608-04859; CA A48241)
(Cases consolidated for opinion only)

774 P2d 489

Lawrence Matasar, Portland, argued the cause for appellant Kenneth Wells. With him on the brief was Hoffman, Matasar & Glaeser, Portland.

Jennifer Jane Martin, Deputy District Attorney, Portland, argued the cause for respondent Multnomah County. With her on the brief was Michael D. Schrunk, District Attorney, Portland.

Claud Ingram, Eugene, argued the cause and filed the brief for appellant Roosevelt Dossie.

No appearance for respondent Joyce Stewart.

No appearance for intervenors.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Multnomah County brought these two forfeiture proceedings pursuant to Multnomah County Ordinance Chapter 7.85.[1] In each case, the trial court ordered forfeiture of the

[1] MCC Chapter 7.85 provides:

"7.85.005 *Title.* This chapter shall be known as the forfeiture ordinance of Multnomah County and may be so pleaded and referred to.

"7.85.010 *Definitions.* As used in this ordinance, unless the context requires otherwise:

"(A) 'Controlled substances' are those defined in ORS 475.005(6) [1983 ed.] except that this shall not include less than one avoirdupois once [*sic*] of marijuana.

"(B) 'Deliver or delivery' is that defined in ORS 475.005(8) [1983 ed.].

"(C) 'Facilitate' means that the property must have some substantial connection to, or be instrumental in, the commission of the underlying illegal activity which this chapter seeks to prevent.

"(D) 'Gambling' is that defined in ORS 167.117(4) [1983 ed.].

"(E) 'Illegal activity' means:

"(1) Gambling or promotion of gambling; and

"(2) The manufacture or delivery of controlled substances; or

"(3) The possession of controlled substances with the intent to deliver.

"(F) 'Manufacture' is that defined in ORS 475.005(14) [1983 ed.].

"(G) 'Marijuana' is tht [*sic*] defined in ORS 475.005(15) [1983 ed.].

"(H) 'Possession of controlled substances with the intent to distribute' is that defined in 21 USC § 841(a)(1) [1976 ed.; published 1981].

"(I) 'Production' is that defined in ORS 475.005(19) [1983 ed.].

"(J) 'Promotion of gambling' is that defined in ORS 167.117(10) [1983 ed.]. [Ord. 422 § 3 (1984)]

"7.85.020 *Policy and Purpose.*

"(A) The Board of County Commissioners finds that:

"(1) Property that is seized from arrested persons which constitutes the proceeds or instrumentalities of a crime must generally be returned to the criminal upon disposition of the charge.

"(2) These instrumentalities and proceeds are often used to again commit the same or another crime and the return of the property thus serves to encourage and perpetuate the commission of crime in Multnomah County.

"(B) The Board of County Commissioners therefore declares that to protect the safety and welfare of Multnomah County residents, it is in the best interest of Multnomah County to:

"(1) Cripple illegal drug trafficking and narcotics activities within this county by depriving narcotics dealers, and those persons dealing with them of the instrumentalities and proceeds of their trade; and

"(2) Seize gambling equipment, records and the proceeds of illegal gambling activity; and

"(3) Otherwise deter illegal activity and remove the operating instrumentalities, profits and proceeds of certain crimes from criminals; and

"(4) Use the forfeited property to further fund law enforcement and criminal

"defendant" property. "Claimants," the owners of the property, appeal. We consolidate the separate appeals for the purpose of this opinion.

---

prosecution functions.

"7.85.025 *Forfeiture.*

"(A) Any person who engages in illegal activity within Multnomah County, shall forfeit to Multnomah County the following property, and no property right shall exist in them:

"(1) All controlled substances which are intended for or have been manufactured or delivered as defined in MCC 7.85.010.

"(2) All raw materials, products, containers, equipment, books, records, research materials (including formulas, microfilms, tapes and data) of any kind which are used, or are intended for use, to manufacture, compound, store, process or deliver any controlled substances.

"(3) All conveyances, including aircraft, vehicles or vessels which are used to manufacture or deliver or in any manner to facilitate the manufacture or delivery of any controlled substance or any such conveyance which is used to transport or conceal any controlled substance.

"(4) All moneys, negotiable instruments, securities or other things of value furnished or exchanged or intended to be furnished or exchanged by or to any person to facilitate any illegal activity, and all proceeds and profits traceable to such furnishment, exchange or illegal activity.

"(5) All proceeds, profits and things of value excepting residential property traceable to any illegal activity.

"(6) All equipment, materials or records of any sort that are used, or intended for use to facilitate any illegal gambling activity; and

"(7) (a) All real property other than residential property which is:

"[1] used to manufacture any controlled substance, or

"[2] used to facilitate the promotion of gambling as defined in ORS 167.127 [1983 ed.].

"(b) This section shall not apply to residential real property which is used to facilitate the manufacture of less than one pound of marijuana when dried.

"(B) This chapter shall not apply to those unlawful acts defined in ORS 166.720(1) and (2) [1983 ed.]. [Ord. 422, § 4 (1984)]

"* * * * *

"7.85.035 *Institution of legal proceedings.*

"(A) In the event of a seizure under this chapter, and upon recommendation of the District Attorney, the County Counsel, acting in the name of the County, may institute a forfeiture proceeding to obtain a judgment of forfeiture against the seized property.

"(B) The proceedings shall be instituted promptly and in accordance with the Oregon Rules of Civil Procedure and the Oregon Rules of Evidence relating to civil actions. Within three judicial days after the seizure, County Counsel shall file the complaint and initiate an application for a temporary restraining order restraining the return of the seized property to the defendant or property owner. The defendant or the owner of the property may demand a trial by jury in any civil action brought pursuant to this section.

In both cases, County filed a complaint in circuit court alleging that *claimants* had

"been involved in one or more of the following illegal activities *in violation of* Multnomah County Code, Section 7.85 *et seq:*

"(a) The possession of a controlled substance with the intent to deliver.

"(b) The delivery of a controlled substance."[2] (Emphasis supplied.)

The complaints allege further that the defendant property constitutes profits or proceeds of the illegal activities and, in the case of appellant Wells, a claimant, that defendant 1979 Honda had been used by Wells to facilitate the above-mentioned violations.

Claimant Wells was served by mail and appeared by answering the complaint.[3] Joyce Stewart, the owner of the BMW, was personally served and also appeared by filing an answer, but does not appeal. After a trial on stipulated facts, in which Wells admitted that the defendant property was proceeds of illegal activity as defined in MCC Chapter 7.85,

---

"(C) County Counsel shall be entitled to deduct from the proceeds any attorney fees, costs and expenses incurred in the litigation. [Ord. 422 § 6 (1984)]

"\* \* \* \* \*

"7.85.045 *Non-Consensual use of property for illegal activity.* No property shall be forfeited under this chapter to the extent of the interest of an owner who did not consent to or was not aware of the use of the property in the illegal activity. [Ord. 422 § 8 (1984)]

"7.85.050 *Separability.* If any section, clause or phrase of this chapter, or its application to any statute, is determined by any court of competent jurisdiction to be invalid or unenforcable for any reason, such determination shall not affect the validity of the remainder of this chapter or its application to any other statutes, but shall continue to be in effect. [Ord. 422 § 9 (1984)]"

[2] County contends that one of the allegations in each case, "possession of a controlled substance with the intent to deliver," is defined in the ordinance by reference to federal law and that, therefore, that charge is outside the scope of ORS 30.315(3) and provides an independent basis for forfeiture. In fact, the federal statute, 21 USC § 841(a)(1), is referred to only with regard to "possession with intent to *distribute.*" (Emphasis supplied.) It does not define that conduct. It merely states that it is unlawful. "Delivery" is defined in the ordinance as in ORS 475.005(8). The conduct charged in these proceedings, "possession with the intent to deliver," is punishable in Oregon as simple possession. *State v. Boyd,* 92 Or App 51, 54, 756 P2d 1276 (1988).

[3] Although there was no motion for leave to intervene, the ordinance expressly provides that the owner of the property is entitled to demand a jury trial, MCC 7.85.035, which implicitly means that the owner is entitled to appear as a party without leave of the court.

the court entered a judgment that defendant property be forfeited to County.

County served appellant Dossie, a claimant, personally. He appeared by filing an answer. Rose Dossie and Rosalyn Robertson intervened. After trial, the court found that County had established that Dossie had engaged in racketeering activity and that the defendant bank accounts had been used for illegal activities.[4] It found that some of the bank accounts were exempt from forfeiture under MCC 7.85.025(B) as proceeds of "unlawful acts defined in ORS 166.720(1) and (2)." It found that the rest of the money, $35,000, was not exempt and was subject to forfeiture and entered a judgment accordingly.

Wells argues that these forfeiture proceedings are barred by ORS 30.315, which provides:

"(1) An incorporated city or any county may, instead of penal enforcement, maintain civil proceedings in courts of this state against any person to enforce requirements or prohibitions of its ordinances or resolutions when it seeks:

"(a) To collect a fee or charge;

"(b) To enforce a forfeiture;

"(c) To require or enjoin the performance of an act affecting real property;

"(d) To enjoin continuance of a violation that has existed for 10 days or more; or

"(e) To enjoin further commission of a violation that otherwise may result in additional violations of the same or related penal provisions affecting the public morals, health or safety.

"(2) The court shall not impose a penal fine in a civil proceeding under subsection (1) of this section.

"(3) The remedies provided by this section shall not be used to enforce any requirement or prohibition of an ordinance or resolution that is also specifically defined as a crime and made punishable under the statutes of this state.

"(4) The remedies provided by this section are supplementary and in addition to those described in ORS 30.310."

---

[4] The court did not make separate findings with respect to each offense or specify that its findings were based on a preponderance of the evidence.

In *Linn County v. 22.16 Acres,* 95 Or App 59, 767 P2d 473, *rev allowed* 308 Or 158 (1989), we held that, although Linn County had no ordinance expressly prohibiting the conduct defined in its forfeiture ordinance as "illegal," the ordinance itself implicitly prohibited the conduct giving rise to forfeiture. Because the ordinance incorporated the state definitions of crimes in setting forth what conduct would result in forfeiture, we held that the ordinance prohibited conduct that is defined as a crime under state law. We concluded, therefore, that the forfeiture proceeding brought to enforce the county's forfeiture ordinance was prohibited by ORS 30.315(3). *See also City of Springfield v. $10,000 In U.S. Currency,* 95 Or App 66, 767 P2d 476, *rev allowed* 308 Or 79 (1989). We conclude that the same result is required here. We write to address several contentions made by County concerning the correctness of our decision in *Linn County* and its applicability to these cases.

County's first argument is that ORS 30.315 is not relevant to a discussion of MCC Chapter 7.85, because these proceedings are not brought to enforce the prohibitions of a county ordinance.[5] We addressed that question in *Linn County v. 22.16 Acres, supra,* 95 Or App at 64, with respect to the Linn County Ordinance, and we adhere to our reasoning in that opinion. We conclude that the same rationale applies to MCC Chapter 7.85. The complaint filed in each case charges that the claimants acted "*in violation of* Multnomah County Code, Section 7.85." (Emphasis supplied.) Although the ordinance does not expressly prohibit the conduct that gives rise to forfeiture, by characterizing certain conduct as "illegal" and imposing sanctions for that conduct, the ordinance implicitly prohibits the activity. *See Springfield v. $10,000 In U.S. Currency, supra,* 95 Or App at 70. These forfeiture proceedings are brought to enforce those prohibitions.

County contends that, because these proceedings are *in rem* and not "against a person," they do not fall within ORS 30.315. County is correct that ORS 30.315 authorizes civil proceedings "against any person" when a county seeks to

---

[5] County's contention that ORS 30.315 has no bearing on the ordinance conflicts with its explanation that MCC 7.85.025, creating an exception to the application of the ordinance to unlawful acts defined in ORS 166.720, was adopted to avoid any conflict with ORS 30.315(3).

enforce a forfeiture and that these proceedings, nominally, are brought against the property sought to be forfeited. The distinction, County urges, is determinative, because, in an *in rem* forfeiture proceeding, the illegal use of the property is the focus of a forfeiture and the culpability of the owner or claimant is incidental to that inquiry. Completing that rationale, County contends that ORS 30.315 is intended to apply only to *in personam* forfeiture proceedings and that ORS 30.315(3) was enacted to prevent equal protection and double jeopardy problems that might arise in the context of those proceedings against a person. In the case of an *in rem* civil proceeding, however, the action is not against a person who might previously have been or later be subject to criminal prosecution, and equal protection and double jeopardy concerns are therefore not present.

County contends, further, that its authority to enact ordinances providing for *in rem* civil forfeitures is not derived from ORS 30.315, which deals only with *in personam* proceedings, but from its general authority under its charter to control matters of local concern that are not addressed by state law.[6] The legislature has not expressed an intention, it contends, to preclude local governments from enacting civil forfeiture ordinances. The state's involvement in forfeiture in certain circumstances should not, County contends, be understood to preempt county involvement.

The issue, however, does not involve preemption by state law; rather, it is whether state law authorizes these proceedings. In enacting ORS 30.315, the legislature has expressed its intention to grant to counties the authority to bring civil actions against "any person" for the enforcement of its ordinances, provided that the county is not seeking to enforce prohibitions that are defined as a crime under state law. The logical implication of that grant of authority is that the legislature did not intend that cities or counties have it in circumstances other than those described in ORS 30.315. In other words, the only type of civil forfeiture enforcement proceeding that a county is authorized to bring is provided for in

---

[6] County also argues that "[t]he legislature's purpose in adopting ORS 30.315 was to grant cities and counties authority to make civil action under local ordinances" and that "[t]he statute specifically authorizes county forfeiture ordinances such as the one adopted by Multnomah County."

ORS 30.315. It *may* bring civil actions against *any person* for the enforcement of its ordinances, but *may not* bring civil forfeiture proceedings *in rem* and may not bring them *in personam* in order to enforce prohibitions defined as a crime under state law.

County would have us conclude that, apart from ORS 30.315, two other statutory provisions manifest an intention by the legislature to authorize counties to bring *in rem* forfeiture proceedings. County cites ORS 30.310, which provides:

> "A suit or action may be maintained by the State of Oregon or any county, incorporated city, school district or other public corporation of like character in this state, in its corporate name, upon a cause of suit or action accruing to it in its corporate character, and not otherwise, in the following cases:
>
> "(1) Upon a contract made with the public corporation.
>
> "(2) Upon a liability prescribed by law in favor of the public corporation.
>
> "(3) *To recover a penalty or forfeiture given to the public corporation.*
>
> "(4) To recover damages for injury to the corporate rights or property of the public corporation." (Emphasis supplied.)

That statute is a general provision concerning a county's or other public corporation's authority to bring specific types of proceedings, including forfeiture proceedings, in its corporate name. It authorizes a county to recover a "forfeiture given to" it. It does not specify the source or nature of the forfeiture, whether *in rem* or *in personam,* or authorize a county to enact ordinances providing for forfeitures. We conclude that it merely authorizes a county to bring forfeiture proceedings in its own name when state law otherwise makes provision for property to be forfeited to the county.

County contends that ORS 166.725(12) also provides authority to local governments to enact ordinances authorizing forfeitures. That section provides:

> "The application of one civil remedy under any provision of ORS 166.715 to 166.735 [Oregon's racketeering statutes] shall not preclude the application of any other remedy, civil or criminal, under ORS 166.715 to 166.735 or any other provision of law."

Similarly, ORS 161.045(3) provides that the state criminal code "does not bar, suspend or otherwise affect any right or liability to damages, penalty, forfeiture or other remedy authorized by law to be recovered or enforced in a civil action * * *." We conclude, once again, that those provisions authorize the enforcement of civil remedies provided elsewhere by *state* law and do not authorize local governments to enact their own forfeiture provisions.

Because we conclude that County's ordinance is inconsistent with ORS 30.315, we do not address whether it may also be incompatible with ORS 166.715 *et seq* and ORS 167.247, or whether it may run afoul of certain state constitutional provisions.

Reversed and remanded with instructions to dismiss.