Argued and submitted September 6, 1989, the decision of the Court of Appeals
affirmed and judgment of the district court reversed January 31, 1990

## CITY OF SPRINGFIELD,
*Petitioner on Review,*

*v.*

## $10,000.00 IN U.S. CURRENCY,
*Defendant (below),*

*and*

## STARR,
*Respondent on Review.*

(TC 87-90762; CA A48321; SC S35955)

786 P2d 723

Timothy J. Harold, Springfield, argued the cause and filed
the petition for petitioner on review.

Charles S. Spinner, Eugene, argued the cause and filed a
response for respondent on review.

LINDE, J.

## LINDE, J.

In ORS 30.315, first adopted in 1961, the legislature set out rules governing the use of civil rather than penal enforcement of local ordinances. Between 1985 and 1989 ORS 30.315 provided:

"(1)   An incorporated city or any county may, instead of penal enforcement, maintain civil proceedings in courts of this state against any person to enforce requirements or prohibitions of its ordinances or resolutions when it seeks:

"(a)   To collect a fee or charge;

"(b)   To enforce a forfeiture;

"(c)   To require or enjoin the performance of an act affecting real property;

"(d)   To enjoin continuance of a violation that has existed for 10 days or more; or

"(e)   To enjoin further commission of a violation that otherwise may result in additional violations of the same or related penal provisions affecting the public morals, health or safety.

"(2)   The court shall not impose a penal fine in a civil proceeding under subsection (1) of this section.

"(3)   The remedies provided by this section shall not be used to enforce any requirement or prohibition of an ordinance or resolution that is also specifically defined as a crime and made punishable under the statutes of this state.

"(4)   The remedies provided by this section are supplementary and in addition to those described in ORS 30.310."[1]

---

[1] In 1989, ORS 30.315 was amended to replace subsections (2) and (3) with a new subsection (3):

"Nothing in this section shall affect the limitations imposed on cities and counties by subsections (3) and (4) of section 1, chapter 791, Oregon Laws 1989."

Subsections (3) and (4) of that section provide:

"(3) This Act is applicable throughout this state and in all cities and counties. The electors or the governing body of a city or county shall not enact and the governing body shall not enforce any charter provision, ordinance, resolution or other regulation that is inconsistent with this section.

"(4) This Act does not impair the right of any city or county to enact ordinances providing for the forfeiture of property based upon conduct that is other than prohibited conduct as defined in this Act if:

"(a) The property was used to commit the conduct described in the ordinances, or is proceeds of the conduct; and

"(b) The forfeiture is subject to procedures and limitations set forth in this

Recently, cities and counties increasingly have turned to use of civil forfeitures as an instrument against the traffic of unlawful drugs, or "controlled substances." The Court of Appeals held local forfeiture ordinances incompatible with ORS 30.315 in the present case and two other cases decided today, *Linn County v. 22.16 Acres,* 309 Or 279, 786 P2d 726 (1990), and *Multnomah County v. $5,650 In U.S. Currency,* 309 Or 285, 786 P2d 729 (1990). The issues and arguments presented differ insofar as the cases involve, respectively, a city, a statutory county (Linn County), and a county that has adopted a "home rule" charter (Multnomah County). We deal with each separately.

In the present case, the City of Springfield obtained a judgment forfeiting $10,000 from Starr, who was named as a defendant. Starr contended (apart from a procedural point rejected by the Court of Appeals) that the city's forfeiture ordinance imposed "a penal fine in a civil proceeding" contrary to ORS 30.315(2) and also contrary to Article XI, section 2, of the Oregon Constitution, which does not allow cities to impose greater penal sanctions than the corresponding state law. *See City of Portland v. Dollarhide,* 300 Or 490, 714 P2d 220 (1986). The Court of Appeals reversed the judgment, holding that the judgment contravened ORS 30.315(3) because it was used to "enforce" a prohibition that also is a crime punishable under state law.[2] 95 Or App 66, 71, 767 P2d 476 (1989). We affirm the decision of the Court of Appeals.

The subsections of ORS 30.315 serve distinct functions. Subsection (1) opens the state's courts to specified civil proceedings to enforce city or county laws instead of penal enforcement by the city or county. These civil proceedings include enforcement of a forfeiture. ORS 30.315(1)(b). Under former subsection (2), a state court could not impose a penal fine in the course of such a civil proceeding. Under former

---

Act."

The 1989 amendments define "prohibited conduct" to include violations and attempts or conspiracies to violate the major provisions of the state's controlled substances law. The quoted amendments therefore address the authority of cities and counties with respect to forfeitures arising from violations of that state law. The present opinion deals with such forfeitures prior to the effective date of chapter 791, Oregon Laws 1989.

[2] The Court of Appeals correctly considered former subsection (3) and not only defendant's citation of former subsection (2) before reaching any constitutional issue.

subsection (3), a local requirement or prohibition that also is specifically defined and punishable as a state crime could not be enforced by the civil court proceedings provided in subsection (1). Former subsection (4) (now (2)) made the remedies listed in subsection (1) supplemental to the general right of cities, counties and other "public corporations" to sue in their corporate capacities on contracts, other liabilities, to "recover a penalty or forfeiture given to the public corporation, or damages for corporate rights or property." ORS 30.310.

The narrow issue under former ORS 30.315(3) is whether the city in this case sought to "enforce" in the district court a forfeiture that in turn was "used to enforce" a prohibition that also is defined and punishable under state law. The Court of Appeals concluded that the forfeiture was used to enforce such a prohibition, and we agree.

The forfeiture ordinance here at issue, SMC 7-12-5, deals specifically with "illegal activity" in controlled substances. The operative section begins with the statements:

> *"Forfeiture.* Any person who engages in illegal activity within the City of Springfield shall forfeit to the City of Springfield the following property, and no property right shall exist in them:

> "(1)   All controlled substances which are intended for or have been manufactured or delivered as defined in 7-12-4 above.[3]

> "(2)   All raw materials, products, containers, equipment, books, records, research materials (including formulas, microfilms, tapes and data) of any kind which are used, or are intended for use, to manufacture, compound, store, process or deliver any controlled substances."

The terms "controlled substances," "delivery," and "manufacture" as defined in SMC 7-12-4 incorporate by reference the definition of these terms under the state's criminal prohibitions, ORS 475.005(6), (8), and (14), excluding less than one ounce of marijuana. Subsections (3), (4), (5), and (6) of SMC 7-12-5 prescribe the forfeiture of conveyances, financial assets, proceeds, and equipment, materials or records used in or derived from "illegal activity," again defined in SMC 7-12-4

---

[3] We assume that "intended for" means "intended for manufacture or delivery."

as manufacturing or delivering controlled substances or conspiring to do so. The context leaves no doubt that, although conduct may be made "illegal" without being made "criminal," the city's forfeiture ordinance applies to activities made criminal by the state's law. ORS 475.992, ORS 475.995, ORS 161.450.

The phrasing of subsection (7) of SMC 7-12-5 is slightly different. It subjects to forfeiture all real property "used to manufacture or deliver or distribute any controlled substance" (other than producing less than one pound of marijuana) without using the word "illegal." But given the definition of "controlled substances," the criminal character of the activity is as much a premise of subsection (7) as of the other subsections of SMC 7-12-5.

It is important to distinguish three issues: local authority to enact such regulations and prohibitions, limitation of city authority found in Article XI, section 2, of the Oregon Constitution, and use of state courts by local governments.

In the cases of cities, independent, nondelegated authority to regulate private conduct depends on the particular city's charter. The City of Springfield's charter authority is not questioned here. Under Article XI, section 2, the exercise of city authority is "subject to the * * * criminal laws of the State of Oregon." The effect on the ordinance of this constitutional clause (which is not expressly limited to penal ordinances) would have to be analyzed under the principles stated in *City of Portland v. Lodi,* 308 Or 468, 782 P2d 415 (1989), *Dollarhide v. City of Portland, supra,* and *LaGrande/Astoria v. PERB,* 281 Or 137, 148, n. 18, 576 P2d 1204, *adhered to on rehearing,* 284 Or 173, 586 P2d 765 (1978), if the city relied on other means of enforcement than the state courts. Today's decisions say nothing about procedures for depriving a person of contraband or other property or transferring ownership to a city or county government without action by the state courts. But because the city here seeks enforcement of its forfeiture ordinance by the state courts, the third of the three issues is dispositive.

The city maintains that this ordinance does not itself "prohibit" the activities that lead to forfeiture and that therefore such forfeitures are not "used to enforce any requirement

or prohibition of an ordinance" contrary to ORS 30.315. For the same reason, the city also contends that in enacting its forfeiture ordinance the city did not create its own criminal offense, vulnerable to challenge under Article XI, section 2, nor impose a "penal fine" contrary to *former* ORS 30.315(2).

The city's argument, which is not implausible, would demand that each city sanction added by a city to a state criminal prohibition be analyzed for the "punitive significance" that distinguishes criminal from civil sanctions, and that would have procedural consequences beyond ORS 30.315. *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977).[4] To repeat, the present decision does not concern the validity of the city's ordinance. But we do not interpret *former* ORS 30.315(3) as narrowly as the city does.

We agree with the Court of Appeals that in ORS 30.315(3) the legislature denied the use of the state courts to "enforce a forfeiture" when this sanction is imposed for conduct that is "defined as a crime and made punishable under the statutes of this state." As noted above, the legislature again addressed the forfeiture authority of cities and counties in 1989.[5] If the role of state courts with respect to local forfeiture ordinances based on violations of state laws needs additional clarification, the statutes can be further amended.

The decision of the Court of Appeals is affirmed. The judgment of the district court is reversed.

---

[4] *Brown* held that the "type of offense," the imposition of involuntary confinement, and the size of a monetary fine were not in themselves criteria of penal as distinct from civil enforcement but were relevant to the ultimate test whether the law, the sanction, and its enforcement procedure carry punitive, "stigmatizing or condemnatory significance" from the perspective of the lawmakers or the general public. 280 Or at 106.

[5] Section 1(2) of chapter 791, Oregon Laws 1989 provides:

"Therefore, the Legislative Assembly adopts the provisions of this Act as the sole and exclusive law of the state pertaining to the forfeiture of real and personal property based upon the prohibited conduct, thereby replacing all charter provisions, ordinances, regulations and other enactments adopted by cities and counties pertaining to such forfeitures. After the effective date of this Act, no actions for forfeiture shall be initiated except those in compliance with the provisions of this Act."